Derbe **ECKHART (d/b/a Almost Heaven Kennels, LLC), Petitioner**

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 18, 2010.

Decided Nov. 15, 2010.

Stephanie E. Lombardo, Lancaster, for petitioner.

David C. McKenzie, III, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BROBSON.

Derbe Eckhart (d/b/a/ Almost Heaven Kennels, LLC) (Petitioner) petitions for review of a January 14, 2010 final order and adjudication of the Secretary of the Pennsylvania Department of Agriculture (Department), affirming two administrative penalties assessed against Petitioner for violations of the Commonwealth Dog Law.[1] We affirm.

In January 2009, Petitioner submitted two applications to the Department's Bureau of Dog Law Enforcement (Bureau). One application sought to renew License No. 2520 to operate a boarding kennel, which the Department had revoked in 2008. The other application similarly sought to renew commercial kennel License No. 2521, which the Department also had revoked in 2008.[2] (Supplemental Certified Record (Supp.C.R.), Ex. A.)

By Kennel License Refusal Order (the Refusal Order) dated January 30, 2009, the Bureau refused both of Petitioner's applications. In support of its refusal, the Bureau cited eleven violations of regulatory provisions, numerous convictions related to animal cruelty (ranging from 1986 through 1993), and pending charges for cruelty to animals. The Bureau concluded that the regulatory violations and the cruelty to animal convictions and charges indicated that Petitioner had not been rehabilitated.[3] The Refusal Order, once effective, required Petitioner to, in part, immediately cease and desist operating a kennel, acquire no additional dogs nor increase the number of dogs by any means, and *divest of all dogs over twenty-five (25) within ten (10) days of the effective date of the order.* The Refusal Order would become effective ten (10) days following receipt, absent a request for a hearing. The Refusal Order was accompanied by a Notice of Kennel License Refusal Order (the Notice) for posting on the kennel premises.

On February 3, 2009, Petitioner appealed the Bureau's Refusal Order. A hearing officer conducted a hearing on February 19, 2009, and, thereafter, the matter was submitted to the Secretary, along with post-hearing briefs, for disposition.

During the pendency of the appeal from the Refusal Order, the Department issued a Revision to Notice of Operating Under Suspension of Kennel License (the Revised Notice) to Petitioner on February 23, 2009. This Revised Notice, which also required posting, advised Petitioner, in relevant part, that Section 211(c)(2) of the Dog Law, 3 P.S. § 459–211(c)(2), regards as "operating under suspension" operators of kennels whose licenses the Department has revoked or refused and who timely file a request for administrative appeal.

---

1. Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. §§ 459–101 to –901–A (the Dog Law).

2. The boarding kennel license authorizes the owner, in part, to operate an establishment that houses dog(s) for compensation by the day, week, or a specified or unspecified time. Petitioner requested boarding kennel class III to accommodate over 25 dogs at any time. The commercial kennel license authorizes the owner, in part, to breed or whelp dogs and sell or transfer any dog to a dealer or pet shop kennel. Petitioner requested commercial kennel class VI for 501 or more dogs of any age during a calendar year. (Reproduced Record (R.R.) Vol. II, Items H and I, pp. 15–18.)

3. Section 211 of the Dog Law, 3 P.S. § 459–211, authorizes the Department, in part, to revoke or refuse a kennel license when a licensee fails to comply with the Dog Law, and to revoke or refuse a license to a person that has been convicted of any law relating to cruelty to animals.

(R.R., Vol. II, Item K.) The Revised Notice also directed Petitioner to comply with the provisions of the earlier Notice. (*Id.*) At the time of receipt of the Revised Notice, Petitioner had a total of 357 dogs at the kennel, with 263 of those dogs over three months of age and ninety-four (94) puppies (*i.e.*, dogs under the age of three (3) months). (R.R., Vol. I, Item 9, pp. 53–54.)

Paragraph 6(I) of the Revised Notice directed Petitioner that he must "immediately cease and desist from operating a kennel, including boarding, buying, exchanging, selling, offering for sale, giving away or in any way transferring dogs." (R.R., Vol. II, Item K.) The Revised Notice, however, provided that paragraph 6(I) would not be enforced while the administrative appeal of Petitioner's 2009 kennel license revocation or refusal is pending. (*Id.*) Paragraph 6(II) of the Revised Notice prohibited Petitioner from acquiring any additional dogs or increasing the number of dogs in the kennel by any means, including breeding. (*Id.*) This prohibition did "not apply to an acquisition or increase by birth of puppies from a mother which, at the time of revocation or refusal was on the property, pregnant and owned by the kennel or the kennel owner." (*Id.*)

On April 23, 2009, a state dog warden inspected Petitioner's kennel after receiving a complaint. (R.R. Vol. I, Item 9, pp. 24–25.) During the April 23, 2009, inspection of Petitioner's kennel, Petitioner admitted that he brought from New York thirty approximately thirty (30) additional dogs without health certificates. (R.R. Vol. I, Item 9, pp. 24–26.)

On May 5, 2009, the Secretary affirmed the Bureau's Refusal Order. (R.R., Vol. II, Item M.) The Secretary's final order provided, in part:

A. [Petitioner] shall immediately comply with all of the following:

(I) Cease and desist from operating a kennel . . .

(II) Acquire no additional dogs nor increase the number of dogs in the kennel by any means, including breeding . . .

(III) Notify the Department prior to the euthanization of any dog . . .

(IV) Permit state dog wardens to inspect the kennel without a warrant . . .

(V) *Divest of all dogs over 25 . . . within ten (10) days after the exhaustion of the appeal period to this Court.*

B. [Petitioner] must first contact the Bureau to obtain approval to transfer dog(s) to reduce the number on the premises to less than 25. . . .

(*Id.* (emphasis added).) Petitioner did not file a timely appeal of that order with this Court.

On June 9, 2009, the Bureau issued an Assessment of Administrative Penalties as a result of the warden's April 23rd inspection, based on the warden's determination that Petitioner acquired thirty (30) dogs after the Bureau issued its Revised Notice. The Bureau concluded that the acquisition violated the terms of the Revised Notice. Citing Section 211(c) of the Dog Law, the Bureau imposed a penalty of $500 per additional dog, for a total penalty of $15,000. (Certified Record (C.R.) Vol. I, Tab 1.)

On June 22, 2009, Petitioner filed a request for an administrative hearing to appeal the Assessment of Administrative Penalties, asserting that: (1) the assessment violated Petitioner's due process rights by imposing fees without first conducting a hearing; (2) the assessment violated the terms of a federal order referenced in the Revised Notice; (3) the numbers of dogs in the kennel did not increase; (4) the additional thirty (30) dogs

in his kennel were ones that he had owned and which he retrieved from a kennel in New York; and (5) the Bureau's notice did not indicate the total count to which it expected Petitioner to adhere. (C.R., Vol. I, Tab 2.)

On June 23, 2009, the warden inspected Petitioner's kennel to monitor Petitioner's compliance with the Secretary's May 5th order. (R.R., Vol. 1, Item 9, pp. 29–30.) The warden counted a total of 250 dogs at the kennel; eight (8) of those dogs were licensed to people who did not live at the kennel's address. (*Id.*) The Bureau removed 217 dogs on that date.

On July 2, 2009, the Bureau issued a second Assessment of Administrative Penalties to Petitioner. In this second assessment, the Bureau determined that Petitioner had violated two aspects of the Secretary's May 5th order—(1) the direction to divest the kennel of all but twenty-five (25) dogs, and (2) the direction to contact the Bureau before transferring dogs in order to reduce the number of dogs to twenty-five (25). The total penalty assessment included a penalty for 216 dogs at Petitioner's kennel for seven (7) days at a rate of $100 per dog per day ($151,200) [4] and a penalty for unauthorized transfers of seventeen (17) dogs at a rate of $100 per dog ($1,700), for a total penalty of $152,900. (C.R. Vol. I, Tab 4.)

On July 14, 2009, Petitioner filed a request for an administrative hearing to appeal the second Assessment of Administrative Penalties. Petitioner asserted that the Bureau had violated his due process rights by imposing the penalty and taking

217 of his dogs without first providing him with a hearing. Petitioner asserted that he had not violated the Secretary's May 5, 2009 order. Petitioner also asserted that the Department had received a notice of appeal relating to the Secretary's May 5th order on June 1, 2009, and that on June 15, 2009, Petitioner filed a petition to transfer the notice of appeal from the Department to this Court.[5] Based upon this procedural posture, Petitioner asserted that the Bureau's imposition of penalties at that time was improper because he had not willfully disobeyed the Secretary's order. (C.R., Vol. I, Tab 5.)

A hearing officer conducted a hearing on Petitioner's administrative appeals of the two assessment orders on August 20, 2009. (R.R., Vol. I, Item 9.) During the hearing, Kristen Donmoyer, a state dog warden, and Drew Delenick, Bureau Supervisor, testified that they visited Petitioner's kennel on March 16, 2009, after his receipt of the Revised Notice and counted a total of 348 dogs at the kennel with 222 of those dogs being over three (3) months of age and 126 being puppies. (*Id.* at 28.) Warden Donmoyer testified that on April 23, 2009, she and Supervisor Delenick inspected Petitioner's kennel and counted 367 dogs on the premises with 269 of those dogs over three (3) months of age and ninety-eight (98) puppies. (*Id.*) *Warden Donmoyer testified that Petitioner stated to her and Supervisor Delenick during the inspection on April 23, 2009, that Petitioner recently had brought to the kennel approximately thirty (30) dogs from New York.* (*Id.* at 24–29.) Warden Donmoyer

---

4. During the removal of the 217 dogs from the kennel there was a miscount, and the penalty assessed against Petitioner was calculated for 216 dogs rather than the 217 dogs that were actually removed from the kennel. (Supp.C.R., Ex. A.) This is an error, however, that inured to Petitioner's benefit.

5. On June 15, 2009, Petitioner filed with this Court a request for *nunc pro tunc* appeal of the Secretary's May 5th order, (C.R., Vol. II, Tab C, Appendix D), which we denied (C.R., Vol. II, Tab C, Appendix D). The Supreme Court denied allocatur. Thus, the Secretary's May 5th order is final.

testified that on June 23, 2009, she and Supervisor Delenick went to Petitioner's kennel with a warrant to enter the property to look for the presence of more than twenty-five (25) dogs. (*Id.* at 29–30.) Warden Donmoyer testified that during that inspection, she discovered a total of 250 dogs at Petitioner's kennel with eight (8) of the dogs individually licensed to other people. (*Id.* at 30.) Warden Donmoyer testified that Petitioner had 217 more dogs than the legal limit of twenty-five (25) imposed by the Secretary's May 5th order. (*Id.* at 30–32.)

The Secretary issued an order on January 14, 2010, affirming the administrative penalties. (Supp.C.R., Ex. A.) First, the Secretary determined that the administrative penalty, imposed on June 9, 2009, was supported by Petitioner's statement against interest that he acquired approximately thirty (30) dogs after receiving the Revised Notice. (*Id.*) The Secretary noted that Petitioner did not testify or present any other witnesses to deny those facts. (*Id.*) Moreover, the Secretary concluded that the record satisfied the existence of at least thirty (30) additional dogs. The Department had the discretion to impose a penalty of not less than $100 nor more than $500 per day for each violation under Section 211(c)(3) of the Dog Law, and the penalty imposed was within that discretionary range.[6]

Next, the Secretary determined that the administrative penalty imposed on July 2, 2009, was both reasonable and supported by the undisputed evidence of record. (Supp.C.R., Ex. A.) Regarding the first part of the penalty, the Secretary determined that the facts are undisputed that Petitioner had ten (10) days after the appeal period to this Court was exhausted—i.e., until June 16, 2009—to divest himself of all dogs over twenty-five (25). (*Id.*) Therefore, at the time of the June 23, 2009 inspection by Warden Donmoyer, when it was revealed Petitioner possessed 217 dogs over the twenty-five (25) dog limit allowed by Section 211(c) of the Dog Law, the imposition of the minimum penalty of $100 per dog per day was proper.[7] The Secretary determined that the second part of the administrative penalty that imposed an additional $1,700 [8] fine for the seventeen (17) dogs Petitioner transferred without having Bureau approval as required in Section B of the May 5, 2009 final order, also was reasonable and supported by undisputed evidence that indicated Petitioner transferred the dogs without approval. (Supp.C.R., Ex. A.) The Secretary, therefore, concluded that the imposition of a total of $167,900 in administrative penalties was proper and within the Bureau's authority. (*Id.*)

On appeal,[9,10] Petitioner appears to argue that the administrative penalties im-

---

**6.** The penalty was calculated by multiplying $500 × 30 dogs, for a penalty of $15,000.

**7.** The penalty was calculated by multiplying 216 dogs × 7 days × $100 per dog, for a penalty of $151,200. As discussed infra in footnote 6, the warden initially believed that there were 216 dogs in excess of twenty-five (25), when, in fact, there were 217 dogs in excess. This miscalculation, however, benefitted Petitioner.

**8.** The $1,700 penalty was calculated by multiplying 17 dogs × $100 each.

**9.** This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992).

**10.** The Department argues that Petitioner has waived consideration of any issues because he

posed were excessive, unreasonable, and disproportionate to the severity of the offense in violation of his state and federal constitutional rights. Petitioner further argues that the penalties were not properly calculated or not supported by substantial evidence of record. Petitioner also appears to argue that the Department was equitably estopped from seizing 217 dogs from his kennel.

■ First, we will address Petitioner's argument that the administrative penalties imposed on him for increasing the number of dogs at his kennel after receiving the Revised Notice and for transferring dogs without prior Bureau approval are excessive, unreasonable, and disproportionate to the severity of the offenses alleged in violation of the Eighth Amendment.

■ The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment is made applicable to the States through the Fourteenth Amendment and has been held to be co-extensive with Article I, Section 13 of the Pennsylvania Constitution. *Jackson v. Hendrick*, 509 Pa. 456, 465 n. 10, 503 A.2d 400, 404 n. 10 (1986) (citations omitted). To determine whether the excessive fines clause has been violated, "[a] court must consider whether the statutory provision imposes punishment; and if so, whether the fine is excessive." *5444 Spruce Street*, 574 Pa. 423, 428, 832 A.2d 396, 399 (2003).

■ Moreover, administrative bodies having expertise in specific professional areas are to be entrusted to fashion administrative remedies that are fair and appropriate. *Slawek v. State Bd. of Medical Educ. and Licensure*, 526 Pa. 316, 322, 586 A.2d 362, 365 (1991). Remedies and accompanying sanctions will not be disturbed on appeal absent a showing of a manifest and flagrant abuse of discretion or purely arbitrary execution of the agency's duties or functions. (*Id.*) If a sentence imposed is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment. *Borough of Kennett Square v. Lal*, 164 Pa.Cmwlth. 654, 643 A.2d 1172, 1175, *appeal denied*, 540 Pa. 586, 655 A.2d 517 (1994). Finding no proof of fraud, collusion, bad faith or abuse of power, a reviewing court will not substitute judicial discretion for administrative discretion. *Council of Plymouth Twp. v. Montgomery County*, 109 Pa.Cmwlth. 616, 531 A.2d 1158, 1162 (1987).

Administrative penalties may be assessed by the Department against a kennel owner for his failure to adhere to the conditions imposed upon him when operating under a Revised Notice. Section 211(c)(3) of the Dog Law. Here, the Department assessed administrative penalties based upon the kennel inspection reports and testimony of Warden Donmoyer and Supervisor Delenick. (C.R., Vol. 2, Tab M.) The penalties were calculated based upon specific guidelines established by Section 211(c) of the Dog Law, which limits penalties to $500 per day for each violation. As such, we cannot conclude that the penalties were excessive, unreasonable, or disproportionate to the severity of the offenses in violation of the Eighth Amendment, and we will not disturb the

---

failed to include a statement of questions involved in his brief, in violation of Pa.R.A.P. 2116(a). Although this Court may refuse to consider arguments a petitioner addresses in his brief if his brief fails to include a statement of questions involved, we have exercised our discretion in the past to address issues subsumed elsewhere in briefs when the petitioner has clearly identified the issue. *Sun Oil Co. v. Workmen's Comp. Appeal Bd. (Thompson)*, 158 Pa.Cmwlth.434, 631 A.2d 1084, 1088 (1993).

Department's exercise of its discretion in determining appropriate sanctions under the Dog Law.

Nonetheless, Petitioner asserts that the administrative penalties are excessive because the total number of additional dogs that had been acquired was unclear and in dispute and because Warden Donmoyer's inspection after Petitioner received the Revised Notice gave no indication of how many of the adult dogs had aged from puppy status into adulthood. Petitioner contends that the Department maximized his penalties by arbitrarily and capriciously using the count of dogs as of the March 16th inspection after he first received the Revised Notice to determine how many additional dogs were at his kennel on April 23, 2009. Petitioner appears to argue that the Department used the wrong "snapshot in time" for purposes of determining the number of dogs that Petitioner added or removed from the kennel.

We find Petitioner's argument to be without merit because Petitioner received notification through the provisions of the Revised Notice on February 23, 2009, that he should not acquire *any* additional dogs. (R.R., Vol. II, Item K.) During the inspection on April 23, 2009, Petitioner admitted to Warden Donmoyer and Supervisor Delenick that he acquired approximately thirty (30) additional dogs from New York, which admission was also supported by the observations of Warden Donmoyer and Supervisor Delenick. That evidence alone established thirty (30) violations.[11] Therefore, the total number of dogs on that date or any other date is irrelevant. (*Id.*) The Bureau had the authority to impose the maximum penalty for the acquisition of each of the additional dogs, which it did. Therefore, the first penalty of $15,000 was proper.

■ Next, Petitioner argues that the Department was equitably estopped from seizing the 217 dogs because the Department had an obligation to forward Petitioner's misfiled appeals to this Court. As noted above, Petitioner sought to appeal from the Department's refusal of his kennel applications, but erroneously filed a notice of appeal with the Department rather than file a petition for review with this Court. When Petitioner became aware that he had not appealed to this Court, he sought to appeal *nunc pro tunc*. This Court denied that application,[12] and Petitioner appealed our decision to our Supreme Court. The Supreme Court issued an order on March 30, 2010, denying allocatur with regard to Petitioner's nunc pro tunc appeal. *Eckhart v. Dep't of Agriculture,* —— Pa. ——, 992 A.2d 125 (2010).

Petitioner asserts that the doctrine of equitable estoppel precluded the Department from seizing Petitioner's dogs on June 23, 2009. Petitioner suggests that the Bureau had a duty to forward to this Court the notice of appeal he submitted to the Department, and that it knew of his *nunc pro tunc* appeal to this Court and knew of the petition for allowance of appeal filed with the Supreme Court. In fact, Petitioner contends that the Department's decision to wait until after the appeal period ended to inform Petitioner that his appeal was defective caused Petitioner's loss of his dogs because he was under the belief that his appeal had been properly filed. Moreover, the Department knew that his petition for allowance of appeal was pending before the Supreme Court when it seized 217 dogs from Petitioner's kennel. Based upon the Department's knowledge of his attempt to appeal its decision, Petitioner appears to contend

---

11. Petitioner does not argue that the figure of thirty (30) dogs is unsubstantiated by the record.

12. *See supra* n. 6.

that his attempt to appeal resulted in a *de facto* stay of the Secretary's May 5, 2009 order. We reject Petitioner's reliance on equitable estoppel. First, he. has neither satisfactorily discussed how that doctrine applies in these circumstances, nor has he referred us to any decisions that support his argument. Second, he has not pointed to any authority for the proposition that an unsuccessful attempt to appeal an agency's determination operates in any way as a stay of an administrative agency's order. Finally, in light of the Supreme Court's ultimate decision to deny allocatur, the law of this case is that Petitioner did not file a timely appeal of the May 5, 2009 order, and, therefore, the Secretary's order is final. Petitioner's argument is without merit.

Alternatively, Petitioner requests that if we determine the administrative penalties are proper, we remand to determine the appropriate penalty amounts. We have concluded that Petitioner's failure to comply with the conditions of the Secretary's May 5, 2009 final order and his multiple violations of the Dog Law supported the Department's imposition of the above-outlined penalties, and that the penalties were reasonable, supported by substantial evidence and properly calculated. Remand, therefore, is not required.

Accordingly, the order of the Department is affirmed.[13]

### ORDER

AND NOW, this 15th day of November, 2010, the order of the Department of Agriculture is hereby AFFIRMED.

---

13. To the extent that Petitioner may have attempted to argue that the Bureau's seizure of 217 dogs constituted an illegal taking, no support for such argument exists given our determination that the Department acted within its authority and was not estopped from doing so.