IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | |
| | : | |
| Libio Matos, Cristobal Investment, | : | |
| Inc. and Libio Matos as president of | : | |
| Cristobal Investment, Inc., | : | No. 1391 C.D. 2018 |
| Appellants | : | Argued: November 12, 2019 |


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED:  December 12, 2019


Libio Matos (Matos), Cristobal Investment, Inc. (Cristobal), and Matos as president of Cristobal (collectively, Appellants) appeal from the Philadelphia County Common Pleas Court's (trial court) August 14, 2018 order granting a final injunction and imposing a statutory fine for violations of The Philadelphia Building Construction and Occupancy Code, Title 4 of the Philadelphia Code (Code).  There are three issues for this Court's review: (1) whether Appellants waived constitutional and evidentiary arguments by failing to appear before the trial court and present arguments; (2) whether the trial court imposed an excessive fine in violation of the United States and Pennsylvania Constitutions; and (3) whether the trial court erred by not shifting the burden of proof to the City of Philadelphia (City) after Appellants submitted a structural engineer's documents contradicting the City inspector's conclusion that Appellants' structure was imminently dangerous.  After review, we affirm.

In 2015, fire damaged a single-family, attached rowhouse at 3503 Dillman Street in Philadelphia (Property). Thereafter, on May 8 and September 25, 2015, Thomas Rybakowski (Inspector Rybakowski), an inspector with the City's Department of Licenses and Inspections (Department), inspected the Property and identified the following Code violations: the Property's floor/ceiling assembly between the first and second floors and the Property's bulging front wall were in danger of collapsing. On May 11, 2015, the Department served a violation notice on the Property's owner, Efrain Martell (Martell), directing that the violations be corrected.

On January 11, 2016, Appellants purchased the Property for $5,000.00. In January 2017, the City filed an equity action (2017 Action) against Martell seeking an injunction requiring the Property's repair or demolition. Upon learning that the Property had been sold to Appellants, the City filed a praecipe to join Appellants in the 2017 Action. On September 26, 2017, after a hearing, Appellants agreed to a consent order (Consent Order) imposing a conditional $5,000.00 fine, and mandating that Appellants submit an engineer's report detailing plans for the front wall repairs, apply for the building permit and begin repairs in accordance therewith by December 7, 2017. The Consent Order also provided that if Appellants failed to timely complete the aforementioned actions, a fine of $75.00 per day would be imposed until Appellants complied. Thereafter, the City moved to dismiss Martell from the 2017 Action. However, on October 12, 2017, the trial court mistakenly dismissed the entire case without prejudice.

On December 8, 2017, the City issued another violation notice to Appellants, identifying the property as "in imminent danger of collapse" and demanding that the violations be corrected (Notice of Violation). Reproduced Record

(R.R.) at 23. Appellants did not appeal from the Notice of Violation and they failed to correct the violations.

On April 25, 2018, the City filed the instant action in the trial court. The trial court held a hearing on June 19, 2018. At the hearing, Inspector Rybakowski described the Property's condition and testified that the defects had still not been corrected. Matos appeared at the hearing, pro se, and acknowledged the earlier Consent Order, stating: "I was informed in November in court to repair the house . . . ." Supplemental Reproduced Record (S.R.R.) at 4. Matos further explained that he is a licensed City contractor, he represented that Appellants "are ready to do the renovation[,]" and requested that the trial court grant an additional 30 days for Appellants to repair the Property. S.R.R. at 4. The following exchange then took place:

> THE COURT: Okay. Well, you're asking for an engineering report?
>
> [CITY'S ATTORNEY]: Yes, we're asking for an engineering report and that report to be submitted to the [D]epartment, and then for him to make the appropriate application for the building permit to begin the work.
>
> THE COURT: Do you have an engineer?
>
> [MATOS]: I have one, yes.
>
> THE COURT: Okay. So you're [sic] engineer has to submit information to the City and you need to go through the process to get a building permit.
>
> [MATOS]: Absolutely.
>
> THE COURT: So you think 30 days should be enough time?
>
> [MATOS]: Yes, it would be okay. Maybe one week.
>
> THE COURT: I'm sorry, I didn't understand.

3

[MATOS]: We can finish the report in one week. We'll ask permit [sic] for one day and two week term --

THE COURT: All right.

[MATOS]: -- the job I ask to have in two weeks or less and maximum 30 days. We come, make renovations. I put the house in [C]ode with the [C]ity.

. . . .

[CITY'S ATTORNEY]: Well, we were going to give [Matos] 30 days to get the engineering report because dependent upon what the engineer finds -- and we would be hoping this would be more than just a visual inspection, but actually a structural inspection. We would give him 30 days to get the report and then to file for the permit.

This is a significant structural defect when you have a bulging wall. So we are not looking for stucco in the cracks, we are looking for correction of the bulge itself. I don't know whether or not [Matos] can complete the work in that time. The [P]roperty would be regularly inspected by the [D]epartment, and obviously, if the work was not done correctly or to [C]ode, there would be new violations issued.

S.R.R. at 4-5.

Although Matos' wife had accepted service of the Complaint at Matos' home, the trial court ordered the City to serve Matos on behalf of Cristobal, and permitted the City to do so at the hearing. The trial court then informed Matos that he had 20 days to answer the Complaint, and also notified him that it would "bring[] [him] back in 30 days[,]" to which Matos responded, "Okay." S.R.R. at 5. That same day, the trial court entered an order continuing the matter until August 14, 2018 and, on June 20, 2018, a notice of the hearing was given pursuant to Pennsylvania Rule of Civil Procedure No. 236, Pa.R.C.P. No. 236. *See* R.R. at 5.

Appellants did not answer the Complaint, and did not appear at the August 14, 2018 hearing. At the August 14, 2018 hearing, Inspector Rybakowski

testified that the Property's front wall was still bulging, was in imminent danger of collapsing, and posed a risk to neighboring homes and pedestrians. Inspector Rybakowski acknowledged that the Property's interior had been rebuilt since the fire, but he was not aware of any permits having been obtained for that work. *See* R.R. at 29. The City requested the Property's demolition, and a fine, explaining:

> Now, Your Honor, I believe the violation notice that has been presented to the court . . . relates to the date of the violation. Calculating that actually, and not going up to today, but I think calculating to the last listing, it was calculated that a fine of $64,950[.00] is liable for the uncorrected violations dating back to the time that Cristobal purchased the [P]roperty.
>
> Again, the violations actually go back sometime before that, but we're being nice and not asking for that.
>
> So I just want to make it clear, that, again, the total of all violations actually would be well over $500,000[.00],[1] but at this point, we're asking for $64,950[.00].

---

[1] The City explains:

> [Appellants] received a hefty discount off of the maximum potential fines. The [] Notice of Violation charged three violations . . . : for the fire-damaged floor-ceiling assembly, the fire-damaged roof, and the bulging front wall. Each of those structures was deemed imminently dangerous. None of those violations were complied [with] by the time of the August 2018 hearing, 249 days after the Notice [of Violation]. The basic statutory fine is $300[.00] per day per violation, times the three violations listed in the Notice. [Code] §[§] 1-109(1); 4-A-601.3; 4-A-601.4-601.6. But because of the 'imminently dangerous' designation, each of those violations became Class III offenses, which carry an enhanced penalty of $2,000[.00] per day. *See* [Code] §§ 4-A-601.1; 4-A-601.3-601.6; 1-109(3); 4-PM-110, R[.]R[.] 23-24 (Notice of Violation). Thus, the maximum statutory fine could have totaled approximately $500,000[.00] for just the time between the last Notice of Violation and the trial, and much more had the fines been calculated from the earlier [n]otices involved in the 2017 Action. Instead, the City sought, and the court awarded, only

> . . . The City will then be seeking an order for demolition of the [P]roperty, and what we will do is, we're going to give this ten days and then we will proceed, if nothing is done or if nothing is applied for, or if nothing is submitted.
>
> We will post an order at the [P]roperty, and once the order is posted, if nothing happens, the City will proceed with demolition.

R.R. at 31.

Because Appellants were not present at the August 14, 2018 hearing, they did not claim that the City's fine request was excessive, or otherwise oppose it. Since Appellants failed to answer the Complaint, the trial court deemed all factual allegations therein admitted and granted the Department's Property demolition request "given the testimony of it being imminently dangerous." R.R. at 32. The trial court also granted the City's request for a $64,950.00 fine, representing $300.00 per day for a portion of the period between the December 8, 2017 Notice of Violation and the August 14, 2018 hearing.

On September 13, 2018, Appellants filed a reconsideration motion (Reconsideration Motion) with the trial court alleging with respect to Appellants' failure to appear at the August 14, 2018 hearing, only that "[] Matos' first language is Spanish, and he *apparently* did not understand the [trial c]ourt's request." R.R. at 39 (underline emphasis omitted, italic emphasis added).[2] Appellants further alleged: "[a][s]tructural [e]ngineer [h]as [s]igned [o]ff on the [b]uilding's [s]afety, and the City

---

> the basic $300[.00] daily fine for only one (not three) violations, and for only a portion of the time the Property was in violation.

City Br. at 26 (citations omitted).

[2] Nowhere in Appellants' Reconsideration Motion, or Appellants' memorandum in support thereof, do Appellants further address or explain Matos' "*apparent*[]" lack of comprehension of the trial court's directives or his alleged justification for missing the hearing. R.R. at 39 (underline emphasis omitted, italic emphasis added). Nor do Appellants contend that they did not receive the trial court's June 19, 2018 order continuing the hearing until August 14, 2018.

6

[w]as [a]ware of this at the time of the August 14[, 2018] [h]earing[;]" "[t]he [o]rder of August 14, 2018, in formulating itself as a final [o]rder, exceeds the [trial c]ourt's powers in [e]quity[;]" and "[t]he [f]ine [e]ntered was [i]nequitable, [p]unitive, and [u]nconstitutional." R.R. at 40-41. Appellants attached documents to the Reconsideration Motion, including purported engineering reports showing the Property was safe. On September 14, 2018, the trial court denied Appellants' Reconsideration Motion. Appellants appealed to this Court.[3]

Before addressing Appellants' constitutional and factual arguments on appeal, this Court must consider the City's contention that Appellants waived all issues by failing to appear and raise them at the August 14, 2018 trial court hearing.

"'[T]o preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue [i]n post-trial motions.' Issues not preserved for appellate review cannot be considered by this Court, even if the alleged error involves 'a basic or fundamental error.'" *Mun. Auth. of the Borough of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 136-37 (Pa. Cmwlth. 2015) (original emphasis omitted) (quoting *Dennis v. Se. Pa. Transp. Auth.*, 833 A.2d 348, 352 (Pa. Cmwlth. 2003)). Failure to appear at a hearing may result in a waiver of all arguments for appeal. *See City of Phila. v. Frempong*, 762 A.2d 395, 397 (Pa. Cmwlth. 2000) (Where appellants failed to attend the hearing, the trial court issued a permanent injunction directing the removal of a commercial truck from a residential property. On appeal, this Court affirmed concluding that "[a]ppellants' failure to attend the hearing and raise issues that could be heard on appeal is fatal to their

---

[3] "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Twp. v. Jones*, 813 A.2d 659, 663-64 (Pa. 2002). Further, "[w]hether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014).

claim."). Specifically, the Pennsylvania Supreme Court has found an excessive fines challenge is waived where the issue was not raised before an administrative tribunal. *See HIKO Energy, LLC v. Pa. Pub. Util. Comm'n*, 209 A.3d 246 (Pa. 2019). This Court has also previously found waiver of excessive fine allegations where such allegations were not raised before the trial court. *See Commonwealth v. Dennis* (Pa. Cmwlth., No. 1873 C.D. 2013, filed October 9, 2014); *see also In re: 1448 W. Loudon St.* (Pa. Cmwlth., No. 201 C.D. 2012, filed August 19, 2013); *Commonwealth v. 928 W. Lindley Ave* (Pa. Cmwlth., No. 766 C.D. 2012, filed May 2, 2013).[4]

> This Court has previously held that **where an issue which could have been raised earlier is raised for the first time in a motion for reconsideration, it is not preserved for appellate review**. *See Bedford Downs M[gmt.] Corp[.] v. State Harness Racing Comm['n]*, . . . 926 A.2d 908, 924 ([Pa.] 2007) ('[I]ssues raised for the first time in a reconsideration request, after the agency has issued its adjudication, cannot be regarded as raising the issues while the matter was before the agency.'); *Ramsey v. P[a.] Milk M[ktg.] B[d.]*, . . . 572 A.2d 21, 25 ([Pa. Cmwlth.] 1990); *Frankford Hosp[.] v. Dep['t] of Pub[.] Welfare*, . . . 466 A.2d 260, 262 ([Pa. Cmwlth.] 1983); *see also Rabatin v. Allied Glove Corp[.]*, . . . 24 A.3d 388, 391 ([Pa. Super.] 2011) ('While the issue was included in the subsequently filed motion for reconsideration, issues raised in motions for reconsideration are beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal.').

*Lin v. Bd. of Revision of Taxes of the City of Phila.*, 137 A.3d 637, 643 (Pa. Cmwlth. 2016) (emphasis added).

In the instant matter, notwithstanding that Matos requested and the trial court granted the 30-day extension, and that the trial court sent Matos notice of the

---

[4] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported opinions are not binding precedent, but may be cited for their persuasive value. *Dennis*, *In re: 1448 W. Loudon St.* and *928 W. Lindley Ave.* are cited for their persuasive value.

8

August 14, 2018 hearing, Appellants did not attend.[5] Had Appellants appeared at the hearing, they could have opposed the City's requested fines as excessive and presented argument for the trial court's consideration. Because Appellants failed to appear at the August 14, 2018 hearing and did not challenge the City's request for the $64,950.00 fine as unreasonable or constitutionally excessive, they did not raise the excessive fine issue "at the earliest possible time during [the] proceeding[.]" *Grever v. Unemployment Comp. Bd. of Review*, 989 A.2d 400, 402 (Pa. Cmwlth. 2010), *superseded on other grounds by* Pa.R.A.P. 1513(d), *as recognized in*, *Morgan v. Unemployment Comp. Bd. of Review*, 108 A.3d 181 (Pa. Cmwlth. 2015). Accordingly, because Appellants raised the issue for the first time in the Reconsideration Motion, it was not preserved for appellate review, and this Court may not now address it.[6]

---

[5] Appellants repeat in their brief, without further explanation, the representation made in the Reconsideration Motion that Matos, "whose first language is Spanish, *apparently* did not understand the Court's instructions, and failed to appear for [the August 14, 2018 hearing.]" Appellants' Br. at 3 (emphasis added).

[6] Even if Appellants had not waived the excessive fines argument, this Court would find that the fines were constitutional. The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." U.S. Const. amend. VIII. The Pennsylvania Constitution similarly provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." Pa. Const. art. I, § 13. A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). The Pennsylvania Supreme Court has explained:

> [T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

*Eisenberg*, 98 A.3d at 1283 (quoting *Commonwealth v. Church*, 522 A.2d 30, 34 (Pa. 1987)). Thus, a fine must be "reasonably proportionate to the crimes which occasion them." *Eisenberg*, 98 A.3d at 1287. However, "[the Pennsylvania Supreme Court] and the Commonwealth Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Eisenberg*, 98 A.3d at 1281.

Appellants argue that, because the purported engineer reports submitted with their Reconsideration Motion contradict the Department's determination that "the [P]roperty is 'imminently dangerous' and no full inspection of the [P]roperty by [the Department] has been made for years, . . . the burden of proof [should] have shifted to [the Department] to demonstrate that [the Property] was imminently dangerous . . . ." Appellants' Br. at 2. Because Appellants' documents were not submitted until Appellants filed their Reconsideration Motion, Appellants' assertion of trial court error can only pertain to the trial court's disposition of the Reconsideration Motion.

Notably, "the purpose of post-trial motions is for the court to correct its own errors, not for parties to remedy their own mistakes." *Drake Mfg. Co. v.*

---

In *Eisenberg*, the Court found that the $75,000.00 fine imposed for a misdemeanor theft of $200.00 was constitutionally excessive. *Id.* at 1287. Citing to *Church* and two Commonwealth Court cases, *Eckhart v. Department of Agriculture*, 8 A.3d 401 (Pa. Cmwlth. 2010), and *Commonwealth v. CSX Transportation, Inc.*, 653 A.2d 1327 (Pa. Cmwlth. 1995), the *Eisenberg* Court distinguished the fines imposed therein, explaining:

> In *Church*, overweight vehicles were fined on a sliding scale **per pound** over the weight limit. In *Eckhart*, the appellant kennel operator had committed numerous infractions incurring a fine amount in excess of $150,000[.00] based on a $100[.00]-$500[.00] **per dog/per day** penalty scheme, $15,000[.00] of which appellant claimed was excessive in light of perceived triviality of the offense. In *CSX*, the appellant's train car leaked enough corn syrup into the Youghiogheny River to kill approximately 10,000 fish, and thus appellant incurred a roughly $100,000[.00] fine, based on a $10[.00] **per fish** calculation.

*Eisenberg*, 98 A.3d at 1287 n.24.

Here, the fines issued against Matos were similarly imposed per day based upon repeated daily violations of numerous Code provisions. The violations pertained to potentially hazardous conditions on the Property which Matos failed to address for over one year, despite City demands to remediate. Thus, the fine was an accumulation of penalties arising solely from Matos' repeated and ongoing failure to correct the violations.

*Polyflow, Inc.*, 109 A.3d 250, 263 (Pa. Super. 2015); *see also Paparelli v. GAF Corp.*, 549 A.2d 597 (Pa. Super. 1988).  Further,

> [**a**]**n order denying reconsideration is unreviewable on appeal**. *See Huntington Nat. Bank v. K-Cor, Inc.*, 107 A.3d 783, 787 (Pa. Super. 2014) ('Pennsylvania case law is absolutely clear that the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal.'); *see also Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391 (Pa. Super. 2011) (noting that issues not raised before the trial court are not preserved for appeal, and issues raised in motions for reconsideration are beyond the jurisdiction of th[e] [c]ourt).  Further, **a trial court may also properly refuse to consider new evidence presented for the first time in a motion for reconsideration**. *See Kelly v. Siuma*, 34 A.3d 86, 94 n.8 (Pa. Super. 2011).

*Bollard & Assocs., Inc. v. H & R Indus., Inc.*, 161 A.3d 254, 256 (Pa. Super. 2017) (emphasis added); *see also Fullman v. Bureau of Admin. Adjudication* (Pa. Cmwlth., No. 975 C.D. 2018, filed April 30, 2019).  Because the trial court's order denying reconsideration is not reviewable on appeal, and since the trial court "could properly refuse to consider" the documents submitted with Appellants' Reconsideration Motion, Appellants' argument fails. *Bollard*, 161 A.3d at 256.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | |
| | : | |
| Libio Matos, Cristobal Investment, | : | |
| Inc. and Libio Matos as president of | : | |
| Cristobal Investment, Inc., | : | No. 1391 C.D. 2018 |
| Appellants | : | |

## O R D E R

AND NOW, this 12th day of December, 2019, the Philadelphia County Common Pleas Court's August 14, 2018 order is affirmed.


_____
ANNE E. COVEY, Judge