James E. Burkholder d/b/a   :
Whispering Spring Kennel,   :
      Petitioner   :
           :
     v.      :
           :
Department of Agriculture,   :  No. 1067 C.D. 2020
      Respondent  :  Argued: September 20, 2021

BEFORE:  HONORABLE P. KEVIN BROBSON, President Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge (P)
     HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY JUDGE FIZZANO CANNON    FILED: October 14, 2021

This case is again before this Court after a previous remand. James Burkholder, d/b/a Whispering Spring Kennel (Burkholder), petitions for review of an adjudication of the Secretary of Agriculture (Secretary) that imposed a $19,500 civil penalty on Burkholder for transferring two dogs in excess of the annual limit under his Class IV kennel license in December of 2017. Upon review, we affirm in part, vacate in part, and remand.

# I. Background[1]

In 2017, Burkholder held a license for a Class IV kennel. Section 206(a) of the Dog Law[2] allows a "Kennel Class IV" license holder to have 151 to 250 dogs of any age during a calendar year. 3 P.S. § 459-206(a). The Dog Law is silent concerning the number of dogs a Class IV kennel license holder may transfer in one calendar year. However, Section 102 of the Dog Law defines a "commercial kennel" as one that, *inter alia*, "sells or transfers more than 60 dogs per calendar year." 3 P.S. § 459-102. A Class IV licensed kennel is not a commercial kennel; therefore, under the Secretary's interpretation of the Dog Law, Burkholder's Class IV kennel license allowed him to transfer no more than 60 dogs in a calendar year. *See Burkholder v. Dep't of Agric.*, 215 A.3d 62 (Pa. Cmwlth. 2019) (*Burkholder I*).

On December 18, 2017, the Department of Agriculture (Department), Bureau of Dog Law Enforcement (Bureau), conducted an inspection that revealed Burkholder had transferred 62 dogs during calendar year 2017, both excess transfers having occurred in December 2017. Burkholder's facility otherwise complied fully with all Class IV kennel licensing standards. *Burkholder I*, 215 A.3d at 64. The Bureau reasoned, however, that the two additional transfers automatically converted Burkholder's operation to a commercial kennel requiring a commercial kennel license. Therefore, the Bureau immediately reinspected the facility applying commercial licensing standards. *Id.* at 64-65. The Bureau issued a notice of violation listing 16 deficiencies in the facility and directing Burkholder to bring the facility into compliance by February 28, 2018. *Id.* at 64.

---

[1] This Court's previous decision provides a more extensive statement of background facts. *See Burkholder v. Dep't of Agric.*, 215 A.3d 62 (Pa. Cmwlth. 2019) (*Burkholder I*). This opinion repeats only the facts necessary for this decision.

[2] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459-101 – 459-1206.

On March 7, 2018, the Bureau reinspected the facility and determined that Burkholder had failed to make the listed upgrades. Thereafter, the Department issued a proposed adjudication imposing a civil penalty of $500 per day for the 80 days between the initial inspection on December 18, 2017, and the follow-up inspection on March 7, 2018, for a total penalty of $40,000. *Burkholder I*, 215 A.3d at 65. Burkholder appealed, and a hearing officer issued a proposed report upholding the proposed penalty. *Id.* at 66. On further review, the Secretary issued a final adjudication adopting the hearing officer's proposed report. *Id.*

Burkholder petitioned for review in this Court. In *Burkholder I*, this Court agreed with the Secretary that the Dog Law limits the number of allowable transfers by a Class IV kennel to 60 per calendar year. *Id.* at 69. Therefore, we reasoned that Burkholder violated the Dog Law by transferring 62 dogs in 2017, because the last 2 transfers exceeded the limit under Burkholder's license. *Id.* (citing Section 207(a.1)(4) of the Dog Law, 3 P.S. § 459-207(a.1)(4)). However, we rejected the Secretary's argument that the additional transfers automatically converted Burkholder's license to a commercial one requiring the numerous upgrades demanded by the Bureau. *Burkholder I*, 215 A.3d at 69-70. We concluded that "[t]he Department can impose civil penalties, or it can order the kennel to cease and desist from exceeding its transfer limit. However, it cannot impose sanctions that are not expressly authorized in the Dog Law." *Id.* at 70. Accordingly, we reversed the Department's penalty order and remanded the matter for further proceedings. *Id.* at 71.

On remand, the Department proposed a civil penalty of $500 per day for each excess transfer from the date of each transfer (December 12 and 13, 2017, respectively) until the end of calendar year 2017, for a total penalty of $19,500. Br.

3

of Pet'r, Ex. A at 14 n.7.  As before, a hearing officer issued a proposed report upholding the Department's proposed penalty, and the Secretary issued a final adjudication adopting the proposed report.  *Id.*, Exs. A & D.  Burkholder again petitioned for review in this Court.

## II. Issues

On review,[3] Burkholder insists the Dog Law does not specify that transfers of more than 60 dogs by a private kennel constitute violations.  Br. of Pet'r at 4-20.  Further, he argues that the penalty imposed is excessive and unreasonable. *Id.* at 20-24.  We address each argument in turn.

## III. Discussion
## A. Limit on Calendar Year Transfers

Burkholder first asserts that the Dog Law does not expressly preclude a holder of a Class IV license from transferring more than 60 dogs per calendar year. In *Burkholder I*, this Court reasoned:

> Section 102 of the Dog Law defines a commercial kennel, *inter alia*, as one that transfers more than 60 dogs a year . . . .  By inference, a "Kennel Class IV" may transfer up to 60 dogs a year but no more.  *We accept this part of the Secretary's construction of the Dog Law*.
>
> This means that *Whispering Spring Kennel violated the Dog Law when it transferred two dogs in excess of the 60-dog transfer limit* in 2017 for a Kennel Class IV . . . .

*Id.* at 69-70 (emphasis added).

---

[3] "This Court's review determines whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Burkholder I*, 215 A.3d at 67 n.5 (citing 2 Pa. C.S. §704).

4

Our dispositive conclusion in *Burkholder I* was that transferring two dogs more than Burkholder's license allowed did not automatically convert his Kennel Class IV license to a commercial one. Our observation that the excess transfers violated the Dog Law was not strictly necessary to that conclusion. Burkholder therefore argues that this Court did not expressly decide that the two additional transfers violated the Dog Law.

Nonetheless, we agree with our discussion on that point in *Burkholder I*, *id*., and we adopt it here. We reiterate that Burkholder's Kennel Class IV license allowed him to transfer not more than 60 dogs per year, for the reasons set forth in *Burkholder I. See id.* Therefore, we conclude the two dog transfers on December 12 and 13, 2017, violated the Dog Law.

## B. Excessiveness of Penalty

In a previous Dog Law matter, this Court explained:

> [A]dministrative bodies having expertise in specific professional areas are to be entrusted to fashion administrative remedies that are fair and appropriate. [] Remedies and accompanying sanctions will not be disturbed on appeal absent a showing of a manifest and flagrant abuse of discretion or purely arbitrary execution of the agency's duties or functions. [] If a sentence imposed is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment. [] Finding no proof of fraud, collusion, bad faith or abuse of power, a reviewing court will not substitute judicial discretion for administrative discretion.

*Eckhart v. Dep't of Agric*., 8 A.3d 401, 407 (Pa. Cmwlth. 2010) (internal citations omitted). In *Eckhart*, we concluded that because the Department had calculated its penalties based on the Dog Law's guidelines, the penalties were not excessive,

unreasonable, or disproportionate to the severity of the offenses. *Id.* We therefore declined to disturb the Department's determination of appropriate sanctions under the Dog Law. *Id.* at 407-08.

Here, Burkholder acknowledges that the Dog Law authorizes a fine of $500 to $1,000 for each day on which a licensed kennel owner operates in violation of the Dog Law. *See* Br. of Pet'r at 20 (citing Section 207(a.2)(1) of the Dog Law, 3 P.S. § 459-207(a.2)(1)). However, he observes that the Dog Law requires the amount of a civil penalty to "'be premised on the gravity and willfulness of the violation, the potential harm to the health and safety of the animals and the public, previous violations and the economic benefit to the violator for failing to comply with [the Dog Law].'" Br. of Pet'r at 20 (quoting 3 P.S. § 459-207(a.2)(1)). Burkholder argues that the Department's asserted basis for imposing a fine of $19,500 fails to comply with the requirements of Section 207(a.2)(1). Specifically, he suggests he did not knowingly transfer 2 dogs in excess of his annual limit, he did not harm any dogs or the public by transferring 2 extra dogs, he has no history of violations, the additional transfers were not motivated by profit because he gave 12 of the 62 dogs away to an animal shelter in order to downsize, and in any event, a $19,500 penalty bears no relation to his potential profit from the 2 excess transfers, because he generally sold dogs for only $800 each.[4] Br. of Pet'r at 21-24.

---

[4] Although his license allowed him to have 151-250 dogs at any given time, Burkholder retained only 84 dogs at the time of the December 2017 inspection, which offers arguable support for his contention that he was downsizing in 2017. *See* Reproduced Record (R.R.) at 61a. However, in *Burkholder I*, the Department noted that, in contravention of Burkholder's stated intent to downsize, four puppies were born at the facility on December 7, 2017. 215 A.3d at 66. In this proceeding, the Department also conceded that Burkholder never exceeded 60 transfers in any prior calendar year, which partially supports his averment that he had no history of violations. R.R. at 67a. However, the record is otherwise bare of evidence to support Burkholder's factual assertions in his brief concerning proper application of the statutory factors.

6

In response, the Department addresses its application of the statutory factors in conclusory fashion, stating simply that it "considered the gravity of the violation, the potential harm to the public, the potential effect on the dog or dogs, the willfulness of the violation, previous violations, and the economic benefit to [Burkholder] for failing to comply with the [Dog] Law or regulations when it determined the amount of the Assessment." Br. of Resp't at 6. The Department offers no explanation of *how* it considered and applied those factors. Rather, as Burkholder correctly observes, the Department asserts essentially the same argument as in *Burkholder I*, *i.e.*, that Burkholder's violations consisted of lacking the correct license to allow the two additional transfers. *See* Br. of Resp't at 6-8.

The Department contends that we should uphold its total penalty because neither the amount of the daily penalties nor the number of days for which the penalties were assessed was "manifestly excessive or the result of fraud, collusion, bad faith or an abuse of power." Br. of Resp't at 11 (citing *Eckhart*, 8 A.3d at 407). The Department supports this contention with a bare averment that its penalty is "fair, reasonable and appropriate" because "[t]his assessment per day is the minimum permitted under the statute." Br. of Resp't at 11. In asserting this position, the Department necessarily assumes that the Dog Law authorizes daily accumulating penalties for discrete dog transfers. Thus, the Department's argument depends on its underlying assumption that a transfer of a dog in excess of the number authorized by a kennel's license is a continuing violation for which ongoing daily penalties may be imposed.[5] That assumption constitutes an error of law by the Department.

---

[5] By contrast, in *Burkholder I*, the Department based its proposed penalty on Burkholder's continuing failure to bring his facility into compliance with the requirements applicable to a commercial kennel. *See generally* 215 A.3d 62.

The distinction between separate and ongoing violations of the Dog Law raises a question of first impression. However, both our Supreme Court and this Court have addressed the distinction in other contexts, particularly regarding penalties imposed by the Pennsylvania Public Utility Commission (PUC), that are instructive here.

In general, "'continuing offenses' are not simply offenses repeated on more than one day; rather, 'continuing offenses' are proscribed activities that are of an ongoing nature and cannot be feasibly segregated into discrete violations so as to impose separate penalties." *Newcomer Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 531 A.2d 85, 87 (Pa. Cmwlth. 1987) (additional citation omitted). For example, in *York Telephone & Telegraph Co. v. Pennsylvania Public Utility Commission*, 121 A.2d 605 (Pa. Super. 1956), the Superior Court[6] upheld a penalty of $50 per day for 655 days during which a utility failed to comply with a PUC order to hire additional employees to improve service. *Id.* at 609-13.

By contrast, in *Newcomer Trucking*, the PUC fined a trucking company for transporting goods of more than one consignor on the same truck at the same time, in violation of applicable PUC regulations. 531 A.2d at 86. A total of 184 violations occurred on 128 separate days. *Id.* This Court affirmed the PUC's

---

[6] Before the amendment of the Pennsylvania Constitution in 1968 that created the Commonwealth Court, all intermediate appeals were to the Superior Court; following the 1968 constitutional convention, the Pennsylvania legislature enacted the Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, *as amended*, *formerly* 17 P.S. §§ 211.101 – 211.510, repealed by the Act of April 28, 1978, P.L. 202, which transferred jurisdiction from the Superior Court to the Commonwealth Court over appeals from administrative agencies, and created the original jurisdiction of the Commonwealth Court. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1070 (Pa. 2012). Where appropriate, we cite as persuasive Superior Court decisions in subject areas that are now within this Court's jurisdiction. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (a Superior Court decision is "particularly persuasive" where the Superior Court was exercising jurisdiction over an administrative appeal, which jurisdiction now lies with this Court).

8

determination that each shipment constituted a separate violation, and therefore, any penalty should be imposed on a per-violation rather than a per-day basis. *Id.* at 87.

Similarly, in *HIKO Energy, LLC v. Pennsylvania Public Utility Commission*, 163 A.3d 1079 (Pa. Cmwlth. 2017), *affirmed*, 209 A.3d 246 (Pa. 2019), a utility overcharged thousands of customers for several months. Rather than viewing the overcharges as a single ongoing violation, the PUC imposed a penalty for each separate invoice on which a utility overcharged any customer during the time period at issue. This Court, later affirmed by our Supreme Court, upheld the PUC's determination that each invoice was a separate overcharge and, therefore, a separate violation. *See id.* at 1107-08 (citing and contrasting *Newcomer Trucking* and *York Telephone*).

In *Eckhart*, this Court upheld the imposition of a per-day penalty for *acquisition* of more dogs than the license holder was allowed to have. However, there is a critical distinction between *Eckhart*, which involved a single continuing violation, and this case, which concerns two separate and discrete violations. A kennel owner holding too many dogs, as in *Eckhart*, can remedy the violation simply by transferring the excess dogs; but where, as here, an owner has transferred more dogs than his license allows, there is no way to correct the violation.[7] We conclude that in such an instance, a per-day fine is improper. Each unauthorized transfer of a single dog is a single violation of the Dog Law, not a continuing violation, because it is not ongoing in nature and such transfers can be feasibly segregated into discrete violations so as to impose separate penalties. *See Newcomer Trucking*, 531 A.2d at

---

[7] As Burkholder aptly observed in his brief before the Department, once the unauthorized transfers occurred, "[t]here was no grace period or chance for Burkholder to change anything." R.R. at 38a. *See also* Br. of Pet'r at 24 (an unauthorized transfer of a dog is "an offense that cannot be stopped or remedied").

9

Thus, here, the two separate unauthorized transfers in December 2017 were two separate violations of the Dog Law, not two continuing violations.[8]

For these reasons, we conclude that the Department erred as a matter of law by imposing ongoing penalties for two discrete unauthorized transfers.

## IV. Conclusion

Based on the foregoing discussion, we affirm the Department's determination that Burkholder violated the Dog Law by transferring two dogs more than the total allowed under his Class IV kennel license in 2017. We vacate the Department's penalty and remand for a redetermination of an appropriate penalty, if any, in conformity with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] A hypothetical example illustrates the arbitrariness of the Department's reasoning. The transfers at issue here occurred on December 12 and 13, 2017. The Department calculated the penalty it imposed on Burkholder by counting the number of days between each excessive transfer and the end of the calendar year when Burkholder's annual license expired. At $500 per day per dog, the penalty totaled $19,500. However, if Burkholder, who was downsizing his kennel, had transferred all 62 dogs on January 1, 2017, and none for the rest of the year, he presumably would have incurred a fine of $365,000 ($500 for each unauthorized transfer for each day of the year) according to the Department's calculation, for exactly the same violations. On the other hand, if Burkholder had transferred the two additional dogs on December 31, 2017, at the end of the license year, he would have received a penalty of only $1000 ($500 per dog for one day) for the same violations. Thus, under the Department's reasoning, two unauthorized transfers on January 1 would be an offense 365 times worse than the same transfers, under the same class of license, on December 31. The Department offers no explanation why the date of an excess transfer should govern the amount of the penalty for that discrete act.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James E. Burkholder d/b/a      :
Whispering Spring Kennel,      :
            Petitioner    :
                         :
         v.           :
                         :
Department of Agriculture,    :   No. 1067 C.D. 2020
            Respondent   :

## O R D E R

AND NOW, this 14th day of October, 2021, the order of the Department of Agriculture (Department) is AFFIRMED to the extent the Department determined that each of two dog transfers in excess of the 2017 Class IV kennel license held by Petitioner, James E. Burkholder d/b/a Whispering Spring Kennel (Burkholder), constituted a violation of the Dog Law, Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§ 459-101 – 459-1206.  The Department's order is VACATED to the extent the Department determined the amount of the penalty imposed on Burkholder should be $19,500.  This matter is REMANDED for further proceedings in accordance with the attached opinion.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge