# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Penn Film Group LLC,            :
                   Petitioner      :
                                    :
             v.                   :     No. 827 C.D. 2021
                                    :     Argued: December 15, 2022
Commonwealth of Pennsylvania,     :
State Ethics Commission,          :
                   Respondent    :

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE LORI A. DUMAS,** Judge
                  **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: April 18, 2023**

Penn Film Group LLC (PFG) petitions for review of the June 23, 2021 Order of the Pennsylvania State Ethics Commission (Commission) finding that PFG negligently violated the Lobbying Disclosure Law,[1] by failing to file its quarterly expense reports for the first and second quarters of 2020. As a result, the Commission imposed on PFG the maximum administrative penalty of $117,800.00. On appeal, PFG asserts that it did not receive notice of the delinquency or the opportunities to cure until June 3, 2021, and upon receipt it immediately cured the noncompliance by filing statements indicating that it did not meet the threshold to report any expenses. PFG argues that the Commission's findings are not supported by substantial evidence, the Commission's imposition of the maximum penalty was arbitrary, and that the Commission violated PFG's due process rights by imposing such an excessive fee when PFG had no actual notice and no meaningful opportunity

---

[1] 65 Pa.C.S. §§ 13A01-13A11.

to defend itself. Upon review, we agree, and accordingly vacate the Commission's Order and remand for further proceedings.

## I.  BACKGROUND

PFG is a registered principal under the Lobbying Disclosure Law.[2] (Final Adjudication, Finding of Fact (FOF) ¶ 1.) As a registered principal, PFG is required to file quarterly expense reports or statements. Section 13A05 of the Lobbying Disclosure Act, 65 Pa.C.S. § 13A05.[3] *See also* 51 Pa. Code § 51.3(b) (identifying the quarters as January through March, April through June, July through September, and October through December). Quarterly reports are due no later than the 30th day after each quarterly reporting period has ended. 65 Pa.C.S. § 13A05(a).

PFG filed a quarterly expense report for the fourth quarter of 2019 but did not file one for the first or second quarter of 2020. (FOF ¶10.) Both reports were due by July 30, 2020.[4] (*Id.*) When PFG did not file its quarterly expense reports, the Commission issued a warning letter on August 27, 2020. (*Id.* ¶ 13; Reproduced Record (R.R.) at 24a-26a.) The warning letter was mailed to 2740 Smallman Street, Suite 200, Pittsburgh, PA 15222, which is the same address listed on PFG's registration statement. (FOF ¶ 13(a), (b).) The warning letter provided PFG an opportunity to cure the alleged noncompliance within 30 days to avoid proceedings

---

[2] "Principal" is defined as "[a]n individual, association, corporation, partnership, business trust or other entity: (1) on whose behalf a lobbying firm or lobbyist engages in lobbying; or (2) that engages in lobbying on the principal's own behalf." Section 13A03 of the Lobbying Disclosure Law, 65 Pa.C.S. § 13A03. Section 13A04 of the Lobbying Disclosure Law governs registration of lobbyists, lobbying firms, and principals. 65 Pa.C.S. § 13A04.

[3] An expense report is due if total expenses for lobbying exceeded $2,500, whereas a statement is acceptable if total expenses were less than $2,500. 65 P.S. § 13A05(d).

[4] Because of COVID-19, the deadline for the first quarter was extended from April 30 to July 30, 2020. (FOF ¶ 10 n.1.)

being instituted. (*Id.* ¶ 15.) The 30-day deadline passed, and no expense reports or statements were filed. (*Id.* ¶ 22.)

On April 12, 2021, the Commission issued a Notice of Alleged Noncompliance. (FOF ¶¶ 18-20; R.R. at 2a-14a.) A formal administrative proceeding was instituted. (R.R. at 32a.) PFG did not file an answer, appeal, or request a hearing. (*Id.*) Thus, the Commission concluded PFG was deemed to have admitted the allegations and waived its right to a hearing. (*Id.*) When neither party requested a hearing, the matter was submitted to the Commission for disposition. (*Id.* at 33a.) By letter dated May 20, 2021, Chief Legal Counsel for the Commission advised the parties they had until 5:00 p.m. on June 3, 2021, to submit any position statements in support of their respective positions. (*Id.*) On June 3, 2021, the Investigative Division of the Commission submitted its position statement, stating, until that date, PFG had "made no effort to contact [the Commission] to resolve this matter and has not responded to [] counsel's emails to [PFG]'s authorized representative[] on February 9, 2021[,] and May 19, 2021." (*Id.* at 34a.) The position statement also outlined the other efforts of the Commission, including an email on July 31, 2020, and a "robocall" on an unspecified date. (*Id.* at 35a.) The position statement also indicates that PFG's authorized representative called counsel for the Investigative Division that same afternoon after receiving the May 20, 2021 letter. (*Id.*) At 3:32 p.m. that day, PFG's authorized representative emailed Chief Counsel for the Commission requesting until June 8, 2021, to file its position statement. (*Id.* at 36a-37a.) Chief Counsel acknowledged receipt of the request, advised it had been submitted to the Commission Chairman for consideration, and suggested PFG "submit any position statement as soon as possible" because Chief Counsel did not know the Commission's position concerning the extension. (*Id.* at 36a.) PFG filed

3

its first and second quarter 2020 expense reports that same day. (FOF ¶¶ 19(a), 21(a); *see also* R.R. at 83a-86a.) It filed a position statement the following day, advising the delinquent expense reports had been filed and there were no expenses to report. (R.R. at 39a.) PFG also requested "waiver of any penalties and other administrative actions due to extenuating circumstances created by the C[OVID]-19 pandemic and the resulting orders issued by Governor Wolf." (*Id.*) PFG explained in its position statement that it "decided to pause lobbying efforts due to film inactivity" at the end of 2019, at which time it was fully compliant with its filing requirements. (*Id.*) In March 2020, the executive orders closing non-essential businesses, combined with COVID-19 itself, "resulted in a cessation of the film industry not just in Pennsylvania but nationwide," resulting in PFG closing its doors and suspending all business activities. (*Id.*) As a result, PFG claimed no one was monitoring emails or in the office to accept mail. (*Id.*) In January 2021, PFG's sublease ended and it "consolidated space with various sister companies," although PFG had not yet resumed business activities. (*Id.*) Therefore, its mailing address changed from Suite 200 to Suite 205. (*Id.*) PFG claimed it did not receive the certified mail sent to its prior address but had since updated its address in the reporting system. (*Id.*)

On June 23, 2021, the Commission issued its Final Adjudication and accompanying Order. After setting forth the facts, as outlined above, and reviewing the relevant statutory and regulatory provisions, the Commission concluded the failure to file the quarterly expense reports was negligent in nature. (Final Adjudication, Conclusion of Law (COL) ¶ 3.) The Commission explained it has the discretion to impose administrative penalties but found "[t]here are no mitigating circumstances concerning [PFG]'s failure to timely file [its] [quarterly expense

4

reports or statements . . . for the first and second quarters of 2020.]" (FOF ¶ 25; *see also* Final Adjudication at 14 ("[T]here is no basis in the record for imposing less than maximum administrative penalties against [PFG].").)  The Commission stated Section 13A09(c)(1) provides the administrative penalty for negligent failure to report as $50 each day for the first 10 days late, $100 each day for days 11 through 20, and $200 each day after 20 days late.  (Final Adjudication at 15 (citing 65 Pa.C.S. § 13A09(c)(1)).)  Accordingly, based on PFG's 307-day delinquency, the Commission calculated the administrative penalty as $58,900 for each quarterly report for a total of $117,800.00.  (COL ¶ 5; Final Adjudication at 15.)  The Commission issued its Order to this effect.  (R.R. at 56a.)

Thereafter, PFG sought reconsideration, which the Commission denied.  (R.R. at 58a-62a, 91a.)  PFG filed a timely Petition for Review.

## II.    PARTIES' ARGUMENTS

Before this Court,[5] PFG raises two issues.  First, it asserts the Commission's imposition of the maximum fine lacks substantial evidentiary support as PFG's delayed response was due to an unprecedented public health crisis, and immediately upon notice of the noncompliance, PFG filed its delinquent quarterly report showing no lobbying activity.  Second, PFG argues the imposition of the maximum penalty under these circumstances violates its due process rights or the Eighth Amendment prohibition against excessive fines.

---

[5] In reviewing the Commission's June 23, 2021 Order, this Court's scope of review "is limited to determining whether necessary factual findings are supported by substantial evidence, an error of law has been committed or constitutional rights have been violated."  *R.H. v. State Ethics Comm'n*, 673 A.2d 1004, 1009 n.11 (Pa. Cmwlth. 1996).

As to its first argument, PFG acknowledges the Commission has discretion to impose penalties but asserts "it also has a duty to consider each case reasonably and fairly to ensure that the severity of any violation fits the chosen penalty." (PFG's Brief (Br.) at 13 (citing *Westinghouse Elec. Corp. v. Pa. Dep't of Env't Prot.*, 745 A.2d 1277, 1281-82 (Pa. Cmwlth. 2000)).) PFG argues the Commission's regulations set forth the factors to consider when fashioning a remedy, and the Commission erred in making a "blanket statement" that none of those factors existed. (PFG's Br. at 14.) PFG asserts that it immediately contacted the Commission once it received actual notice. (*Id.* at 15.) PFG also asserts that it explained its failure to timely file the reports or respond to the Commission's correspondence was the result of the "cessation of its business operations in the face of the COVID-19 pandemic." (*Id.*) Moreover, PFG contends this was the first time it had been involved in disciplinary proceedings related to missing quarterly reports. (*Id.*) Finally, it asserts "that while the reports were late, PFG had nothing to report" as there was no money spent on lobbying activity in 2020. (*Id.*) Thus, PFG asserts "[t]here is [] no factual support, let alone substantial support, to justify the Commission's imposition of the maximum statutory fine." (*Id.* at 16.)

PFG further argues that "[t]he arbitrary and excessive nature of [the] penalty becomes even more stark upon examination of a substantially similar adjudication issued the same day in [*In re: Connections Education*, 21-005-L]."[6] (*Id.*) According

---

[6] A copy of the final adjudication in *Connections Education* is attached to PFG's Brief as Appendix A. Following argument in this matter, PFG filed a letter indicating there had been a change in status of authorities under Pennsylvania Rule of Appellate Procedure 2501(b), Pa.R.A.P. 2501(b). Therein, PFG asserted that the Commission issued a decision on January 24, 2023, in *In re Allies for Children*, No. 22-007-L, that PFG claimed "materially affects the decision in . . . *Connections Education*." (PFG's Letter dated Feb. 14, 2023.) The Commission responded *Allies* **(Footnote continued on next page…)**

to PFG, similar to here, Connections Education did not file the first or second quarter 2020 lobbying expense reports and did not respond to warnings. While it ultimately filed its reports in April 2021 indicating there were no expenses to report, Connections Education contacted the Commission two months earlier to indicate they would be filed, whereas PFG immediately filed their reports upon actual notice. Yet, PFG contends the Commission only imposed a $7,000 fine on Connections Education based upon a consent agreement between the parties. (*Id.* at 16-17.)

With regard to its due process/excessive fine argument, PFG argues that the penalty imposed by the Commission "bears no rational relationship to the gravity of the offense it is designed to punish." (*Id.* at 19.) PFG asserts that it was assessed a "six-figure fine" for "a first-time offense resulting in $0 of unreported lobbying activities." (*Id.*) PFG argues that "[i]t is also extraordinarily unreasonable to fine an entity for failing to adhere to a reporting requirement when the cause of that failure is an unprecedented global pandemic." (*Id.*) Accordingly, PFG requests that this Court vacate the Commission's Order. In the alternative, the Commission asks

---

*for Children* "does not mention, nor does it have any legal or practical effect on *Connections Education*." (Commission's Letter dated Feb. 24, 2023.) Under Rule 2501(b),

> [i]f any case or other authority relied upon in the brief of a party is expressly reversed, modified, overruled or otherwise affected so as to materially affect its status as an authoritative statement of the law for which originally cited in the jurisdiction in which it was decided, enacted or promulgated, any counsel having knowledge thereof shall file a letter, which shall not contain any argument, transmitting a copy of the slip opinion or other document wherein the authority relied upon was affected.

Pa.R.A.P. 2501(b). Upon review of the Commission's decision in *Allies for Children*, we find that it does not "expressly reverse[], modif[y], overrule[] or otherwise affect[]" *Connections Education*. *Allies for Children* makes no mention of *Connections Education* and is based upon a different set of facts. Accordingly, we decline to consider *Allies for Children*.

that the fine be modified "to reflect a reasonable penalty that is proportionate to the violation and properly accounts for all mitigating circumstances." (*Id.* at 1.)

The Commission points out that PFG, after shutting down for the pandemic, neglected to check either its mail or email, failed to change its address on file, and failed to file its Expense Reports. (Commission's Br. at 6-7.) It argues that the Lobbying Disclosure Law sets forth the procedure for Notices of Alleged Noncompliance, as does its regulations, and failure to file an answer or otherwise appeal constitutes a deemed admission, which entitles it to impose a penalty. (*Id.* at 7-8 (citing 51 Pa. Code § 63.4(6), (8).)) Here, the Commission asserts it mailed notice to PFG at its registered address and even emailed its authorized representative twice, all of which went unanswered. (Commission's Br. at 8.) The Commission asserts that while PFG denied getting the earlier notices, it did receive the last letter, which was mailed to the same address. (*Id.*)

The Commission further responds that the regulations provide it "**may** consider" the factors set forth in Section 63.6(3) of the Regulations, but it is not required to do so. (Commission's Br. at 9 (emphasis in original).) Even assuming the Commission was required to consider these factors, the Commission maintains that it was correct in finding that "no factors existed in any meaningful way to lower the penalty." (*Id.*) Addressing the factors in its brief, the Commission asserts that PFG "did not contact the Commission or take any meaningful measures to attempt to remedy the delinquency" because PFG ignored email and mail sent to it and failed to update its address. (*Id.* at 10.) The Commission also asserts that the pandemic was not a justifiable excuse because PFG makes no allegation as to "**how** the pandemic made it **impossible** for [PFG] to file [its] expense reports online with the Department of State." (*Id.* at 11 (emphasis in original).) Moreover, while the

8

Commission acknowledges that PFG had not previously violated the Lobbying Disclosure Law, it "committed two [] violations in concurr[e]nce." (*Id.*) Further, the Commission asserts that the facts of the instant matter are distinguishable from those in *Connections Education* because there the principal "was responsive." (*Id.* at 10.)

The Commission classifies the issue as one of first impression, noting that the cases cited by PFG in support of the alleged unreasonableness of the penalty imposed are not Lobbying Disclosure Law cases. (*Id.* at 11.) Even so, the Commission asserts that *Westinghouse Electric*, cited by PFG in its brief, supports the imposition of the penalty in this case due to the "protracted failure to comply with its duties." (*Id.*) The Commission argues PFG is asking the Court "to ignore the plain language of the Lobbying Law," which it cannot do, by requiring the Commission to consider the factors in its regulations when there is no requirement to do so. (*Id.* at 11-12.)

The Commission also argues that it appropriately found that PFG violated the Lobbying Disclosure Law by blatantly failing to file expense reports for two consecutive quarters, and that the administrative penalty was consistent with the Lobbying Disclosure Law and regulations and, as such, neither unreasonable nor unconstitutional. The Commission further argues that the facts of the instant case are distinguishable from those in *Commonwealth v. Heggenstaller*, 699 A.2d 767 (Pa. Super. 1997), which PFG cites in support of its claim, because that matter involved a criminal statute, the Lobbying Disclosure Law does not recognize *de minimis* violations, and "failing to file expense reports is much more severe than failing to pay $28.75," which was the amount of 911 phone charges underlying the $6,550 fine in *Heggenstaller*. (Commission's Br. at 12-13.) The Commission

9

explains that by failing to timely file its expense reports, PFG thwarted the intent of the Lobbying Disclosure Law and "undermined the confidence and integrity of our lobbying system." (*Id.* at 13.)

In its reply brief, PFG acknowledges it is not "without fault" and did not timely file the quarterly expense reports but asserts its "oversight was reasonable given the unprecedented circumstances of the COVID-19 pandemic, and the gravity of the offense at issue does not warrant the imposition of the maximum allowable fine." (PFG's Reply Br. at 1.) PFG argues it "halted all operations" meaning: "PFG had no lobbying activity to report because it was not engaged in any activity of any kind. PFG was not monitoring emails because there was no business activity to monitor. PFG was not receiving mail because it had no one present in the office." (*Id.* at 2.) PFG disputes that it did not act until after a large fine was levied, as the Commission asserts, stating within hours of receiving a letter indicating its position statement was due, PFG had cured the default by filing the reports, phoned and emailed the Commission's chief counsel, requested additional time to respond, and filed a position statement the next day. (*Id.* at 3-4.) It claims *Westinghouse Electric* does not support the penalty here because the violation there spanned several years, involved repeated failure to notify the agency, and resulted in harm to the public, all of which were aggravating circumstances. (*Id.* at 4-5.) PFG acknowledges the Commission's regulations listing factors to consider are permissive, but "the very existence of such a list supports the principle that the imposition of the maximum fine is not always appropriate or should not be used as a default position." (*Id.* at 5.) "Regardless of whether the Commission 'may' or 'must' consider these factors, the Commission's conclusion that none existed (after explicitly citing them) is not supported by substantial evidence." (*Id.*)

PFG further replies that "[t]he Commission's attempt to distinguish *Heggenstaller* is [] misguided." (*Id*. at 7.) PFG argues that "[r]egardless of the specific statutory scheme that applies, the Constitutional requirement of proportionality remains unchanged." (*Id.*) As for undermining the public's confidence and trust in the lobbying system, PFG asserts that interest is not served by mechanically imposing the maximum penalty, and "[t]he responsibility of the Commission must be weighed against the rights of PFG as a citizen of the Commonwealth." (*Id.*)

## III. DISCUSSION

Before turning to the merits of PFG's arguments, a brief overview of the statutory and regulatory provisions applicable to the filing of expense reports under the Lobbying Disclosure Law, the violation of those provisions, and the concomitant penalties associated with such violations will be helpful.

The intent of the Lobbying Disclosure Law is as follows:

> The Constitution of Pennsylvania recognizes that all free governments are founded upon the authority of the people. It further provides that the power to make law in this Commonwealth is vested in the General Assembly, and the power to enforce law is vested in the Executive Department. The Constitution also guarantees the people the right to petition those invested with the powers of government for redress of grievances. **The ability of the people to exercise their fundamental authority and to have confidence in the integrity of the processes by which laws are made and enforced in this Commonwealth demands that the identity and scope of activity of those who are paid to influence the actions of the General Assembly and the Executive Department be publicly and regularly disclosed.**

Section 13A02(a) of the Lobbying Disclosure Law, 65 Pa.C.S. § 13A02(a) (emphasis added). In furtherance of that goal, lobbyists, lobbying firms, and principals are required to register with the Department of State (Department).

11

Section 13A04 of the Lobbying Disclosure Law, 65 Pa.C.S. § 13A04(a). As part of the registration statement, a principal or lobbying firm is required to provide certain information to the Department including its permanent address, daytime phone number, and the email address of the authorized representative or agent, if available. 65 Pa.C.S. § 13A04(b)(1). Registration is biennial. 65 Pa.C.S. § 13A04(a).

Also in furtherance of that goal, there are certain reporting requirements. Section 13A05(a) of the Lobbying Disclosure Law provides:

> A registered principal shall, subject to the penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), file quarterly expense reports with the [D]epartment electronically using the computerized filing system developed by the [D]epartment that is consistent with the purpose of this chapter no later than 30 days after the last day of the quarter.

65 Pa.C.S. § 13A05(a). Section 13A05(b) of the Lobbying Disclosure Law provides for the content of expense reports, stating in pertinent part:

> (1) Each expense report must list the names and registration numbers when available of all lobbyists by whom lobbying is conducted on behalf of the principal and the general subject matter or issue being lobbied.
>
> (2) Each expense report shall include the total costs of all lobbying for the period. The total shall include all office expenses, personnel expenses, expenditures related to gifts, hospitality, transportation and lodging to State officials or employees, and any other lobbying costs. The total amount reported under this paragraph shall be allocated in its entirety among the following categories:
>
>> (i) The costs for gifts, hospitality, transportation and lodging given to or provided to State officials or employees or their immediate families.
>>
>> (ii) The costs for direct communication.

(iii) The costs for indirect communication.

(iv) Expenses required to be reported under this subsection shall be allocated to one of the three categories listed under this section and shall not be included in more than one category.

65 Pa.C.S. § 13A05(b).[7]

Section 13A05(d) provides that an expense report is required if total expenses for lobbying exceed $2,500 for a registered principal in the reporting period; if where a registered principal does not meet the $2,500 threshold for filing an expense report, a registered principal shall file a statement to that effect within 30 days of the end of the quarter.[8]  65 Pa.C.S. § 13A05(d).  Section 13A06 of the Lobbying Disclosure Law sets forth certain exemptions from registration and reporting, which are not applicable in the instant matter.  65 Pa.C.S. § 13A06.  Pursuant to Section 13A08(g), the Commission has the authority to initiate investigations and hold hearings concerning any alleged violations.  65 Pa.C.S. § 13A08(g).

Under the noninvestigative process outlined in the Commission's regulations, prior to issuing a notice of alleged noncompliance for failure to report, the Commission will issue a warning notice, giving the recipient 30 days to cure the alleged noncompliance.  51 Pa. Code § 63.4(1)-(2).  If not cured within that time period, the Commission issues a notice of alleged noncompliance to the authorized representative, employee, or agent, identifying the nature of the alleged noncompliance and advising of the administrative and criminal penalties possible.  Section 13A09(a)(1.1), (2) of the Lobbying Disclosure Law, 65 Pa.C.S. § 13A09(a)(1.1), (2); 51 Pa. Code § 63.4(2).  If a person disagrees with the alleged

---

[7] The Board's regulations also provide what the quarterly expense report should include. See 51 Pa. Code § 55.1(g).

[8] According to the Final Adjudication, the Department increased the threshold for reporting under Section 13A05 of the Lobbying Disclosure Law from $2,500 to $3,000 in 2017.  (R.R. at 40a.)

13

noncompliance, the person may appeal the determination to the Commission. 65 Pa.C.S. § 13A09(3); 51 Pa. Code § 63.4(3). The failure to file an answer or request a hearing results in the alleged noncompliance being deemed admitted. 65 Pa.C.S. § 13A09(5); 51 Pa. Code § 63.4(6)-(8).

Section 13A09(b)(3) provides that "[i]f the [C]ommission finds that failure to register or report was negligent, it shall determine the amount of the administrative penalty to be imposed." 65 Pa.C.S. § 13A09(b)(3). "At least four members of the Commission . . . must find a violation by clear and convincing proof." 51 Pa. Code § 63.4(15). Section 13A09(c)(1) sets forth that a registered principal's negligent failure to report as required under the Lobbying Disclosure Law, "is punishable by an administrative penalty not exceeding the following:"

> (i) For the first 10 late days, $50 for each late day.
>
> (ii) For each late day after the first 10 late days through the 20th late day, $100 for each late day.
>
> (iii) For each late day after the first 20 late days, $200 for each late day.

65 Pa.C.S. § 13A09(c)(1). The administrative penalty is levied by the Commission, following a hearing upon majority vote of all members. 65 Pa.C.S § 13A09(c)(2).

Relevant to this matter, in determining whether to impose less than the maximum penalty, Section 63.6(3) of the Commission's regulations sets forth several factors which the Commission may consider. Section 63.6(3) provides:

> In determining whether to impose an administrative penalty that is less than $50-per-day, the Commission may consider factors including the following:
>
>> (i) Whether the respondent contacted the Commission or took any meaningful measures to attempt to remedy the delinquency, deficiency or false statement.

14

(ii) Whether the respondent has raised any justifiable excuse such as, for example, the following:

(A) The unavailability of records due to loss, theft or destruction through no fault of the respondent.

(B) Incapacitating physical or mental illness, hospitalization, accident involvement, or death of a person required to register or report, a person whose participation is essential to the filing, or a member of the immediate family of the person.

(iii) Whether the record establishes that the matter involved the first instance that the respondent was subject to the registration/reporting requirements of the act.

(iv) Whether Commission records indicate that the Commission has previously notified the respondent, in writing, of other delinquent, deficient, or false registration statements or reports.

(v) Whether proceedings have previously been initiated against the respondent under the act, either by the Commission or by the Office of Attorney General.

(vi) Whether there are any other factors that should be considered as aggravating or mitigating factors in the case.

51 Pa. Code § 63.6(3).

"[T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1283 (Pa. 2014) (quoting *Commonwealth v. Church*, 522 A.2d 30, 34 (Pa. 1987)). "[A]dministrative bodies having expertise in specific professional areas are to be entrusted to fashion administrative remedies that are **fair and appropriate**. *Eckhart v. Dep't of Agric.*, 8 A.3d 401, 407 (Pa. Cmwlth. 2010) (citing *Slawek v. State Bd. of Med. Educ. & Licensure*, 586 A.2d 362, 366 (Pa. 1991)) (emphasis added). "Remedies and accompanying sanctions will not be disturbed on appeal absent a showing of a manifest and flagrant abuse of discretion or purely arbitrary

15

execution of the agency's duties or functions." *Id.* "If a sentence imposed is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment." *Id.* (citing *Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994)). If there is "no proof of fraud, collusion, bad faith or abuse of power, a reviewing court will not substitute judicial discretion for administrative discretion." *Id.* (citing *Council of Plymouth Twp. v. Montgomery County*, 531 A.2d 1158, 1162 (Pa. Cmwlth. 1987)).

With this backdrop in mind, we turn to the first of PFG's issues.

A. *Whether the Commission's decision imposing the maximum fine on PFG is supported by substantial evidence and/or arbitrary.*

PFG first argues that the Commission's finding that there are no mitigating circumstances to warrant imposition of anything less than the maximum fine lacks substantial evidence. PFG also argues the Commission's Order is arbitrary under the circumstances.

As discussed above, Section 13A09(b)(2) of the Lobbying Disclosure Law requires that "[i]f the [C]ommission finds that failure to register or report was negligent, it shall **determine** the amount of the administrative penalty to be imposed." 65 Pa.C.S. § 13A09(b)(2) (emphasis added). The administrative penalty **cannot exceed** the amounts set forth in Section 13A09(c). In other words, the Commission has the obligation to make a determination as to the amount of an administrative penalty, and while there is a maximum limitation, there is no minimum amount.

To assist the Commission in determining the amount of the administrative penalty, it promulgated regulations that contain various factors which the Commission may consider in rendering its determination. 51 Pa. Code § 63.6(3).

16

The existence of the delineated factors, and the requirement that the Commission make a determination, support that the maximum administrative penalty permitted should not be the default. Yet, that appears to have been the Commission's approach here in imposing the maximum administrative penalty for, essentially a paper violation of the Lobbying Disclosure Law, as PFG had no lobbying expenses to report as it has ceased all operations due to the COVID-19 pandemic.

The Commission found "[t]here are no mitigating circumstances concerning [PFG]'s failure to timely file" the two quarterly expense reports or statements and "there is no basis in the record for imposing less than maximum administrative penalties against [PFG]." (FOF ¶ 25; Final Adjudication at 14.) Notably, the Commission cites 51 Pa. Code § 63.6(3), but the Commission provides no discussion of those factors or explanation as to why they do not apply in the Commission's view. Thus, it is not clear the Commission actually considered the factors set forth in its regulations. It would appear the Commission did not, as a review of the record reveals evidence that would be relevant to consideration of these factors, which, if accepted, would mitigate PFG's liability.

For instance, on the first factor set forth in Section 63.6(3), which inquires as to whether the principal took "meaningful measures" to remedy delinquency when it became aware thereof, the record and arguments reflect that this factor militates to imposing a lesser penalty. There is no dispute that PFG filed its statements the same day it received the Investigative Division's position statement on June 3, 2021, the date PFG asserts it first had notice of the delinquent statements and potential penalty. (FOF ¶¶ 19(a), 21(a); *see also* R.R. at 39a, 83a-86a.) That same day, PFG also contacted the Commission's Counsel via phone and emailed the Commission's Chief Counsel informing him that it had filed the no expense statements and

17

requesting an additional five days to file its position statement. (R.R. at 34a-37a.) PFG was instructed to "submit any position statement as soon as possible," and it prepared and submitted a position statement the next day. (*Id.* at 36a.) PFG performed all these measures within 24 hours of receiving the Investigative Division's position statement. Notwithstanding that the Commission acknowledged that PFG filed its "no expense statements" on June 3, 2021, (R.R. at 50a-51a), the Commission still found no evidence that would support a lesser penalty on this basis.

On the second factor, PFG has raised a "justifiable" excuse for its delinquency, which should have been considered. *See* 51 Pa. Code § 63.6(3)(ii). PFG does not dispute that it did not timely file its statements. Rather, PFG's position is that its oversight, in consideration of the unprecedented circumstances of the COVID-19 pandemic, the closure orders, and PFG's decision to cease all business operations in light of the inactivity of the film industry business, was reasonable and should have been considered by the Commission in determining an appropriate penalty. The Commission contends that, in light of all the correspondence sent to PFG without response and PFG's failure to advise the Commission of its change of address, the pandemic cannot be used as an excuse for PFG's failures. Although the Commission would like to discount the role the pandemic played, the types of justification cited in this factor relate to things that are generally **beyond the control of the filer**. For example, Section 63.6(3)(ii) provides, as **examples** of valid justifications, "[t]he unavailability of records due to loss, theft or destruction through no fault of the respondent," and "[i]ncapacitating physical or mental illness, hospitalization, accident involvement, or death of a person required to register or report, a person whose participation is essential to the filing, or a member of the immediate family of the person." 51 Pa. Code § 63.6(3)(ii). These are but a few

18

examples and are not intended to be the only circumstances that can be considered. Moreover, it is notable that, as a result of the COVID-19 pandemic, the Department itself extended the deadline to file first quarter 2020 expense reports from April 30, 2020, to July 30, 2020, thereby recognizing the pandemic's impact on timely filing. (R.R. at 46a.) While certain things may have been within PFG's control, the pandemic and the associated closure orders were, indisputably, beyond the control of PFG, and thus, should have been considered.

The third factor is "[w]hether the record establishes that the matter involved the first instance that the respondent was subject to the registration/reporting requirements of the act." 51 Pa. Code § 63.6(3)(iii). This factor likely militates against PFG, as the record establishes that this was not the first instance PFG was subject to the reporting requirements under the Lobbying Disclosure Law. PFG has been registered as a principal since January 31, 2017, and PFG filed its fourth quarter expense report for 2019 on February 3, 2020. (R.R. at 17a-18a, 21a.)

As to the fourth factor, which inquires whether there have been prior delinquencies, there is no dispute that this is the first instance in which PFG has been delinquent in its filings. This factor clearly militates against imposing the maximum penalty, but the Commission did not even address or consider it when imposing the maximum penalty.

As to the fifth factor, any other aggravating or mitigating factor, the parties do not dispute that PFG had no expenses to report for the first and second quarters of 2020 because it suspended its lobbying efforts at the end of 2019. When PFG filed its statements on June 3, 2021, the records reflect that PFG, in fact, had $0 lobbying expenses to report. Thus, because PFG did not meet the threshold reporting requirement to file expense reports for the relevant periods, under Section 13A05(d)

19

of the Lobbying Disclosure Law, and PFG was only required to file a statement to that effect. 65 Pa.C.S. § 13A05(d). Although PFG may have violated the Lobbying Disclosure Law, it was not by unlawfully lobbying or hiding its lobbying efforts from the Commission. Rather, PFG's violation was a paper one – PFG failed to timely advise the Commission that it had engaged in no lobbying. This could be a mitigating circumstance that the Commission failed to consider or explain why it would not warrant a reduction in the penalty. Given the evidence in the record before it, we cannot conclude the Commission's finding that there was no such evidence to militate against imposition of the maximum administrative remedy is supported by substantial evidence.

PFG further argues that the Commission's imposition of the maximum fine against it is arbitrary when it is compared to the decision it issued on the same day in *Connections Education*. Procedurally, PFG argues that the two matters are nearly identical – both principals failed to file their expense reports for the first and second quarters of 2020 and received Warning Notice Letters to that effect on August 27, 2020. However, the Commission argues the matters are distinguishable.

Reviewing the two matters reveals that they are not sufficiently distinguishable so as to warrant such a **drastically** different result and supports PFG's contention that the Commission's actions against it were arbitrary. Like PFG, Connections Education did not timely file its expense reports for the first and second quarter of 2020. The violations were the same in the two cases, as was the initial lack of response to the Department's correspondence. The only difference is Connections Education filed its quarterly reports 271 days late, whereas PFG's quarterly reports were 307 days late. While Connections Education eventually reached out to the Department and resolved the matter slightly more quickly than

20

PFG did, which certainly could warrant a lesser penalty, this does not support the Commission's position that PFG's violation and actions warranted a penalty of $117,800.00, that was more than 15 times greater than the $7,000.00 penalty paid by Connections Education for the **same violation**.

In sum, the record and arguments show that it is possible that some of the Section 63.6(3) factors weighed against imposing the maximum penalty. However, it is not apparent that the Commission considered any of those factors as it found "[t]here are no mitigating circumstances" and "there is no basis in the record for imposing less than maximum administrative penalties against [PFG]," (FOF ¶ 25; Final Adjudication at 14), even those that cannot really be disputed, such as the lack of prior delinquencies and that PFG immediately resolved the delinquency once it became aware thereof. Thus, we cannot conclude the Commission's findings are supported by substantial evidence. This is not to say that no penalty may be imposed. Rather, the Commission's Order is vacated, and the matter is remanded for the Commission to render a new adjudication.

*B. Whether the Commission imposed an unconstitutionally excessive fine.*[9]

The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII. "The Eighth Amendment is made applicable to the [S]tates through the Fourteenth Amendment." *Commonwealth v. Real Prop. & Improvements Commonly Known as 5444 Spruce St.*, 832 A.2d 396, 399 (Pa. 2003). Article I, section 13 of the Pennsylvania Constitution is almost identical to the Eighth Amendment, stating that "[e]xcessive

_____

[9] Given our disposition of the first issue, it may be unnecessary to reach PFG's second issue related to whether the penalty is an excessive fine. However, since we are remanding for a new adjudication, as a matter of efficiency, we will address the argument.

21

bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." PA. CONST. art. I, § 13. The Pennsylvania Supreme Court has held article I, section 13 to be coextensive with the Eighth Amendment. *5444 Spruce St.*, 832 A.2d at 399. "To determine whether the excessive fines clause has been violated, '[a] court must consider whether the statutory provision imposes punishment; and if so, whether the fine is excessive.'" *Eckhart*, 8 A.3d at 407 (quoting *5444 Spruce Street*, 832 A.2d at 399).

"[T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations." *Eisenberg*, 98 A.3d at 1283 (quoting *Church*, 522 A.2d at 34). "Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution." *Id.* However, "[a] fine[] must be reasonably proportionate to the crimes which occasion them." *Id.* at 1287. A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). Both this Court and the Pennsylvania Supreme Court "have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Eisenberg*, 98 A.3d at 1281.

Administrative penalties may be assessed by the Commission against registered principals for negligent failure to register or report. 65 Pa.C.S. § 13A09(c)(1). The penalties imposed against PFG were calculated based upon specific guidelines established by Section 13A09(c) of the Lobbying Disclosure Law, which sets the maximum penalties at $50 per day for the first 10 days, plus $100 per day for the next 10 days, plus $200 per day for the remainder of days until

the noncompliance is cured. 65 Pa.C.S. § 13A09(c). The Commission imposed those maximum penalties.

Although there is a dearth of case law directly addressing fines imposed pursuant to the Lobbying Disclosure Law, there are a number of other decisions that address excessive fines or penalties under other statutory schemes, which inform the Court's decision. For instance, in *Eckhart*, this Court upheld the imposition of administrative penalties in the amount of $151,200 and $1,700 imposed against a kennel operator for failure to comply with conditions of a revised notice. Citing the kennel operator's history of violations, including animal cruelty allegations and the fact that, after an order requiring the operator to remove over 200 dogs from the property, the operator actually acquired approximately 30 more dogs, the Court held that the Department of Agriculture was authorized to impose the maximum fine allowed per dog. 8 A.3d at 408. Here, there is no evidence PFG, following actual notice of the alleged noncompliance, did anything contrary to the notice; rather, PFG immediately took steps to do exactly what it was asked to do – file the delinquent quarterly reports.

In *Westinghouse Electric*, which both parties cite, Westinghouse was fined $3.2 million for a violation of The Clean Streams Law[10], and its implementing regulations promulgated by the Department of Environmental Protection. Westinghouse argued that the fine was excessive as there was no evidence that its management knew of its violation or attempted to conceal it. *Westinghouse Elec.*, 745 A.2d at 1281. We rejected this argument and, upholding the penalty, explained that "the penalties imposed . . . are linked to the number, seriousness[,] and duration of the violations involved here." *Id.* Westinghouse further argued the fine was

---

[10] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001.

23

excessive when compared to others, which the court rejected, citing the difference in length of time the violations occurred and the lack of evidence of injury to the waters of the Commonwealth in the other matters. *Id.* As discussed above, the Commission imposed a drastically lesser penalty on the same day it issued its Order in this matter in a largely analogous case, *Connections Education*.

In *Commonwealth v. CSX Transportation, Inc.*, a derailed train car broke open and poured corn syrup into a river, killing approximately 10,000 fish. 653 A.2d 1327, 1329 (Pa. Cmwlth. 1995). This Court reversed the trial court's dismissal of the criminal information charging CSX with violating Section 2504(a)(2) of the Fish and Game Code, 30 Pa.C.S. § 2504(a)(2). This Court determined that a fine of $10 per fish, amounting to a total fine of $100,000, did not violate CSX's due process, noting the intent of the applicable section was "to protect fisheries and wildlife," and the fine was appropriate for the harm caused. *CSX*, 653 A.2d at 1332-33. *See also City of Philadelphia v. DY Props., LLC*, 223 A.3d 717, 723 n.12 (Pa. Cmwlth. 2019) (indicating it would uphold a $243,200 fine as not being excessive as they were in accordance with the statute and arose from repeated and ongoing failure to correct violations that were hazardous); *City of Philadelphia v. Joyce* (Pa. Cmwlth., No. 896 C.D. 2019, filed Dec. 4, 2020) (upholding $25,000 fine because it was an aggregation of fines based on daily violations arising from the failure to remediate dangerous conditions despite repeated notices).

Overall, these cases do not support the Commission's decision to impose **the maximum penalty** of $117,800.00, as in these cases the respective violations posed **dangers** to the public. Here, in contrast, there is no claim that there was a "danger" posed to the public as a result of PFG not filing its reports in which it would state that it had no lobbying expenses. While the Commission argues public trust in the

24

lobbying system would be undermined, as discussed more fully below, it does not explain how that trust is undermined when a quarterly expense report or statement showing there was **no lobbying activity to report** is filed late, particularly under the unique circumstances here.

We conclude this case is more akin to *Heggenstaller*. There, the appellant failed to pay $1.25 per month on his telephone bill for 911 emergency services in violation of a county ordinance. The Superior Court determined that the $6,591.25 fine imposed against the appellant was excessive in light of the $1.25 fee, recognizing that although a cumulative fine was in accord with the ordinance, "[a] fine should be sufficient enough to discourage the conduct, but not so excessive as to be punitive in nature.[11] 699 A.2d at 769. Because the fine at issue was unreasonable and excessive, in light of the amount of the fee itself, the Superior Court reversed its imposition and remanded for reimposition of a fine more in line with the violation.

When the fine imposed against PFG is considered in light of the violation and the circumstances as a whole, including the pandemic, the $117,800.00 fine is not proportionate to PFG's failure to timely file expense reports indicating that no expenses (and no lobbying) occurred during the two quarters at issue, and, therefore, is excessive. The Commission argues that the violation of the intent of the Lobbying Disclosure Law is sufficient harm in **all cases** to warrant the imposition of the **maximum fine** in a situation where no lobbying occurred. Such argument seemingly disregards that, under the Eighth Amendment and related precedent, the violation and the fine must be, essentially, weighed to determine if the latter is

---

[11] In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

proportionate to the former. In the above-cited cases, the courts examined the actual violation(s), the harm or injury (or potential for danger) involved, and the amount of the fine and, then, concluded whether the fine was not excessive. While the purpose of the Lobbying Disclosure Law is laudable, the fine imposed here is disproportionate to the actual violation at issue to survive a constitutional inquiry. Under these circumstances, the Commission abused its discretion because the fine was "manifestly excessive." *Eckhart*, 8 A.3d at 407 ("If a sentence imposed is within the statutory limits, there is no abuse of discretion unless the sentence is manifestly excessive so as to inflict too severe a punishment.") For these reasons, Order imposing the administrative penalty is vacated, and the matter is remanded for the Commission to impose a more proportionate fine.

## IV.  CONCLUSION

In summary, the Commission offers no explanation to warrant imposition of the maximum administrative penalty for failing to timely file a statement showing zero lobbying expenses to report for the relevant time periods. Although the Commission has discretion in imposing penalties, that discretion is not unfettered. The factors set forth in Section 63.6(3) provide guidelines, or factors, for the Commission to consider, where relevant, in the exercise of its discretion. The Commission found none of the factors militate against imposition of the maximum penalty, despite record evidence that some of the factors cannot reasonably be disputed. Thus, this finding is not supported by substantial evidence. Furthermore, in not explaining **why** the maximum penalty was warranted, but relying, essentially, on the **fact** of the violation, to impose the maximum penalty, it is as though the Commission did not exercise its discretion at all. Lastly, under the unique circumstances of this case, the maximum administrative penalty imposed is

excessive. This is particularly so where the violation was not the failure to file an expense report, showing that lobbying **had** occurred, but a statement indicating, here, that **no** lobbying had occurred during the relevant quarters. Accordingly, the Commission's Order is vacated, and this matter is remanded for the Commission to impose an administrative penalty that is more in line with the violation.

<br>

**RENÉE COHN JUBELIRER,** President Judge

<br><br>

Judge Wallace did not participate in the decision in this case.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Penn Film Group LLC,            :
               Petitioner     :
                          :
        v.                :    No. 827 C.D. 2021
                          :
Commonwealth of Pennsylvania,    :
State Ethics Commission,          :
               Respondent   :

# **O R D E R**

**NOW**, April 18, 2023, the Order of Commonwealth of Pennsylvania, State Ethics Commission, dated June 23, 2021, is **VACATED**, and this matter is **REMANDED** for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

_____
**RENÉE COHN JUBELIRER,** President Judge